UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MANNY FUENTES,

                              Plaintiff,

v.                                                              10-CV-684 JTC

MR. BALCER, Correctional Sergeant,
Attica Correctional Facility, and
MR. ARRINGTON, Correctional Officer,
Attica Correctional Facility,

                              Defendants.

_____

APPEARANCES:          MANNY FUENTES, Plaintiff *Pro Se.*

                      ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE
                      STATE OF NEW YORK (BENJAMIN K. AHLSTROM,
                      ASSISTANT ATTORNEY GENERAL, OF COUNSEL), Buffalo,
                      New York, Attorneys for Defendants.

This case has been transferred to the undersigned for all further proceedings.

Plaintiff, Manny Fuentes, proceeding *pro se*, brought this action seeking injunctive

relief and money damages pursuant to 42 U.S.C. § 1983 based on alleged unconstitutional

conditions of his confinement while he was an inmate in the care and custody of the New

York State Department of Corrections and Community Supervision ("DOCCS")[1] at Attica

Correctional Facility ("Attica CF").[2]  By order entered January 4, 2011, this court dismissed

the action as against certain defendants for lack of personal involvement in the alleged

_____

[1]By enactment of Chapter 62 of the Laws of 2011, the New York State Department of
Correctional Services ("DOCS") was merged with the New York State Division of Parole to create the New
York State Department of Corrections and Community Supervision ("DOCCS").

[2]The court has been advised that Mr. Fuentes has since been released from DOCCS' custody.
Item 29-2 (Statement of Undisputed Facts), ¶ 1.

constitutional deprivations, and directed service of process upon the remaining defendants, Corrections Sergeant Craig Balcer and Corrections Officer Edward Arrington. Item 6. Following discovery, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 29) seeking dismissal of the complaint in its entirety.

For the reasons that follow, defendants' motion is granted.

## BACKGROUND[3]

On September 19, 2007, plaintiff filed a grievance pursuant to the Inmate Grievance Program ("IGP") established by DOCCS procedures (discussed at further length below in this decision and order), alleging as follows:

At 1:45 p.m. on August 24, 2007, while housed in A-Block at Attica CF, plaintiff suddenly lost the ability to remain standing and fell to the floor of his cell. He cried out for assistance, but no staff member came to check on him. Officer Arrington passed by plaintiff's cell at 3:27 p.m. as he was making his rounds on the cell block, but ignored

---

[3]The facts set forth in this section are derived from the pleadings, affidavits, exhibits, and other materials on file, including defendants' "Statement of Undisputed Facts" (Item 29-2), submitted in accordance with Rule 56 of the Local Rules of Civil Procedure for the Western District of New York. Local Rule 56 provides that a party moving for summary judgment must submit a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried ...," Local Rule 56(a)(1), which will be deemed admitted for purposes of the motion unless "specifically controverted by a correspondingly numbered paragraph in the opposing statement" required under Local Rule 56(a)(2). Defendants have also complied with the Local Rule's requirement that the moving party provide *pro se* litigants written notice of the consequences of failing to respond to the motion. *See* Local Rule 56(b).

Notwithstanding this notice, plaintiff has not submitted the responding statement required by Local Rule 56(a)(2). As the Second Circuit has noted, "[w]hen a party has moved for summary judgment ... and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992). Accordingly, the facts set forth in defendants' Local Rule 56(a)(1) statement are deemed admitted to the extent they are supported by the evidence of record. *See Bonilla v. BOCES*, 2010 WL 3488712, at *1 (W.D.N.Y. Sept. 2, 2010).

plaintiff's cries for help.  Two other unidentified Corrections Officers also passed by his cell and ignored him.  Officer Arrington returned around 4:00 p.m. and asked plaintiff what was wrong.  Plaintiff tried to explain that he was unable to move.  Arrington told him to "shut up," and left without rendering assistance.  At 4:48, an unidentified mental health nurse arrived to give plaintiff his medications.  She told him she would call the clinic for help, but no one came.  At around 5:00 p.m., Arrington returned to plaintiff's cell while making his "count" and remarked to his unidentified partner, "He's still alive."  At 5:15 p.m., a nurse named Bridget stopped by his cell and told him she would see what she could do to get him help.  At about 5:45 p.m., his cell door opened and two inmate porters entered with a wheelchair.  He told them he needed professional assistance.  At that point, Sergeant Balcer arrived at plaintiff's cell with other Officers and told plaintiff he had to get up and get dressed if he wanted to go to the clinic.  Plaintiff told Balcer he was unable to move, and Balcer left.  He returned around 6:27 p.m. with a nurse named "Sheryle" and two porters, who placed plaintiff on a bed board and transferred him to the clinic.  Some time later, an ambulance arrived to take plaintiff to Erie County Medical Center ("ECMC"), where spinal surgery was performed.  *See* Item 33-1, Grievance No. 52525-07.

Plaintiff's grievance was referred to the facility Superintendent, in accordance with IGP procedures.  On October 4, 2007, the Superintendent's Office issued a written determination denying the grievance, stating as follows:

> This grievance has been investigated by a Lieutenant and includes an interview with the grievant, along with written memorandum from staff named.
>
> The grievance states: That the grievant was ignored when having a medical emergency.

> Upon interview, the grievant reiterated his claims and provided no witnesses or any other pertinent information.  Staff is on record denying all allegations.  Written statements by staff do not support the timeline provided by the grievant.  The Investigating Lieutenant could find no evidence to support the grievant's accusations.  The Investigating Lieutenant states that the staff involved appear to have acted in a timely manner.  He also states that it appears that the grievant did not notify staff until approximately 5:00 on the date in question, not earlier as stated in the grievance.

Item 1, p. 14.  Plaintiff's appeal to the Inmate Grievance Program Central Office Review

Committee ("CORC") was unanimously denied by written determination dated November

14, 2007, stating that:

> Upon full hearing of the facts and circumstances … CORC upholds the determination of the Superintendent for the reasons stated.

> CORC notes that the facility administration has conducted a proper investigation and that the employees in question have gone on record to deny grievant's allegations.  CORC has not been presented with sufficient evidence to substantiate that he has been the victim of harassment.

> CORC note that [Officer Arrington] indicated that he notified medical of the grievant's complaint.  The grievant was seen by medical staff at his cell and he refused to be taken by wheelchair to the Infirmary.  The grievant later agreed to be taken to the facility emergency room at approximately 6:40 p.m.

Item 1, p. 15.

Plaintiff filed the complaint in this action on August 16, 2010, in which he alleges

that at 3:27 p.m. on August 24, 2007, he was lying on the floor of his cell in his own blood

and urine unable to move and crying out for help, when Officer Arrington walked by twice

without rendering assistance.  He claims that Officer Arrington returned some time later

with Sergeant Balcer, entered the cell, and kicked plaintiff in his side and on the bottom of

his feet while telling him to get up and put his clothes on if he wanted to go to the infirmary.

He further alleges that, while Sergeant Balcer looked on, Officer Arrington continued to kick

plaintiff "at a record and rapid pace" until plaintiff felt a "pop" in an area of his spine where

-4-

he had preexisting injury, resulting in severe pain.  *See* Item 1, ¶¶ 13-18.  He also claims

that he "was afraid to mention the beating by [defendant] Arrington" in his grievance "due

to fear of his life," *id.* at ¶ 25, based on threats of bodily harm he allegedly received from

defendant Arrington "because he was a witness to an assault on another inmate …." *Id.*

at ¶ 31.  He claims that the acts of defendants Arrington and Balcer constitute the use of

excessive force and deliberate indifference to his serious medical needs, in violation of his

right to be free from cruel and unusual punishment under the Eighth Amendment to the

United States Constitution.

In support of the motion for summary judgment, defendant Arrington has submitted

a declaration, based upon his personal knowledge and review of documents generated and

maintained by DOCCS in the ordinary course business.  As set forth in his declaration,

defendant Arrington categorically denies that the events as described by plaintiff, first in

Grievance No. 52525-07 and subsequently in the complaint in this action, ever took place.

Specifically, defendant Arrington states that, at approximately 5:00 p.m on August 24,

2007, he found plaintiff on the floor of his cell.  Plaintiff told Arrington he was having back

pain.  Arrington contacted medical staff, and provided a wheelchair and hospital gurney,

which plaintiff refused.  Plaintiff was eventually transported to the infirmary by Nurse

Stewart at approximately 6:45 p.m.  *See* Item 31.

Defendant Balcer has also submitted a declaration, based upon personal knowledge

and review of DOCCS records, denying that the events described by plaintiff in Grievance

No. 52525-07 and in the complaint in this action ever took place.  Balcer states that, at

approximately 5:00 p.m. on August 24, 2007, Officer Arrington notified medical staff that

plaintiff was complaining of back pain, and Arrington was told that the nurse would come

after medications were distributed.   Arrington brought a wheelchair to plaintiff's cell to transport him to the infirmary, but plaintiff refused and instead began to yell, creating a disturbance.   Balcer then arrived at plaintiff's cell, and plaintiff told him he was unable to feel his legs or control his bladder.   Balcer called medical staff to explain plaintiff's condition, and was told that the nurse would come after medications were distributed. Balcer told Corrections staff not to allow plaintiff to be moved  until the nurse arrived.  The nurse arrived at approximately 6:10 p.m., and plaintiff was placed on a backboard with a cervical collar and transported to the infirmary at approximately 6:40 p.m.  *See* Item 32.

Defendants seek summary judgment dismissing the complaint, on the following grounds:

1.	Plaintiff failed to exhaust available administrative remedies with respect to his claim of excessive force.

2.	Based on the evidence of record, no reasonable jury could find in favor of plaintiff on his claim that Officer Arrington and Sergeant Balcer were deliberately indifferent to plaintiff's serious medical needs.

These grounds are discussed in turn below.

## DISCUSSION

**I.	Summary Judgment**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for

summary judgment remain unchanged.  *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011).  Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …."  *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …."  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)), *aff'd*, 2008 WL 5083122 (2d Cir. 2008); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

## II.      Failure to Exhaust Excessive Force Claim

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 …, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Because section 1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all … ," *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516, an inmate's failure to exhaust is an absolute bar to an action in federal court.  *Martin v.*

*Niagara County Jail*, 2012 WL 3230435, at *6 (W.D.N.Y. Aug. 6, 2012). "The PLRA exhaustion requirement requires proper exhaustion. That is, prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (internal citation and quotation marks omitted).

In New York State, a prison inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the inmate grievance resolution committee ("IGRC"), which is comprised of inmates and DOCCS employees; (2) if appealed, review of the IGRC's determination by (or, if the committee is unable to reach a determination, referral to) the superintendent of the facility; and (3) if the superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC"). *See* 7 N.Y.C.R.R. § 701.5. All three steps of this procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *Morrison v. Parmele*, ___F. Supp. 2d___, ___, 2012 WL 4356713, at *2 (W.D.N.Y. Sept. 25, 2012) (citing *Porter*, 534 U .S. at 524).

However, while full exhaustion is mandatory under the PLRA, the Second Circuit has recognized certain "special circumstances" which may excuse a prisoner's failure to exhaust, including: (1) when administrative remedies are not actually made available to the prisoner, *see Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004); (2) when the defendants waive the affirmative defense by failing to raise or preserve it, *see Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); and (3) when the defendants acted in such a manner that they are estopped from raising it, *see Ziemba v. Wezner*, 366 F.3d 161, 163

(2d Cir. 2004); *see also Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (failure to exhaust is an affirmative defense, and defendants' actions may estop the state from asserting it).[4]  As noted in *Giano*, in the absence of any such justification for not pursuing administrative remedies, "dismissal with prejudice, when remedies are no longer available, is required …." *Id*.

In this case, as discussed above, the record is clear that plaintiff did not exhaust his claim that defendant Arrington kicked him as he was lying on the floor of his cell in his own blood and urine, while defendant Balcer looked on without interceding.  Plaintiff alleges that he did not mention the use of excessive force in his grievance due to his fear of retaliation by Officer Arrington, because Arrington had threatened plaintiff with bodily harm for reporting to the Inspector General that he had witnessed an assault on another inmate. *See* Item 1, ¶¶ 25, 31.

The Second Circuit has recognized that an inmate's failure to exhaust may be excused in some circumstances if the inmate demonstrates that threats or intimidation either "rendered all administrative remedies unavailable ... [or that] some procedures that would ordinarily be available were effectively unavailable." *Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004).  Whether remedies were rendered effectively unavailable is an objective inquiry, asking whether "a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation omitted).  "[M]ere allegation[s] of a generalized fear of retaliation [are] insufficient" to excuse a failure to file a grievance. *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) (collecting cases).  In addition,

---

[4]The exhaustion defense was timely raised by defendants, *see* Item 15 (Answer to Complaint), ¶ 14, and has not been waived.

the failure to allege that the inmate was specifically threatened regarding the grievance procedures may lead to the conclusion that a similarly situated individual may have not considered the administrative remedies unavailable.  *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).

As indicated, plaintiff has not alleged that he was specifically threatened with bodily harm should he resort to the inmate grievance procedures to seek administrative relief on his own behalf for mistreatment by prison officials.  Rather, plaintiff has alleged that he was threatened "because he was a witness to an assault on another inmate …."  Item 1, ¶ 31. Even assuming the truth of this allegation, in the absence of any supporting documentation or deposition testimony, it must be deemed insufficient to provide a basis upon which a reasonable jury could determine that a similarly situated individual of ordinary firmness would have considered the inmate grievance procedures effectively unavailable as an internal administrative remedy for redress of the application of excessive force as alleged in the complaint.

Accordingly, upon review of the record presented on summary judgment, and upon full consideration of pertinent legal authority, the court finds that plaintiff failed to fully exhaust his administrative remedies with respect to his claim that defendants applied (or acquiesced to the application of) excessive force during the incident alleged to have taken place in plaintiff's cell on August 24, 2007, and that plaintiff has not demonstrated the existence of circumstances sufficient to justify any recognized excuse for this failure to exhaust.  Pursuant to 42 U.S.C. § 1997e(a), plaintiff is therefore precluded from seeking relief in this court based on his claim that defendants used excessive force against him on August 24, 2007, in violation of the Eighth Amendment.

III.    **Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

Plaintiff's remaining claim seeks injunctive relief and damages under 42 U.S.C. § 1983 based on defendants' alleged deliberate indifference to his serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.  "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v. Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. September 16, 2011).

 "The Eighth Amendment's prohibition against cruel and unusual punishment has been construed to include the denial of adequate medical care for an inmate's serious medical needs."  *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. October 10, 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The care provided to prisoners to treat their injuries or illnesses must meet minimum medical standards of adequacy and be reasonably intended to satisfy their

medical needs.  *Muhammad v. Reeves*, 2012 WL 5617113, at *6 (W.D.N.Y. Nov. 15, 2012); *see also Farmer*, 511 U.S. at 832 (Eighth Amendment imposes duty on prison officials to "take reasonable measures" to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Estelle*, 429 U.S. at 103-04 & n. 8 (citing state statutes, regulations, and "model correctional legislation" addressing proposed minimum standards of medical care for prison inmates).  To show that prison officials' attention to an inmate's medical condition was so inadequate as to amount to cruel or unusual punishment prohibited by the Eighth Amendment, the inmate must prove that the prison officials' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle*, 429 at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Inmates' claims for damages under section 1983 based on  deliberate indifference to a serious medical need are subjected to a two-pronged test consisting of objective and subjective elements.  First, the court must determine, with regard to objective criteria, whether plaintiff's condition is such that the alleged deprivation of medical assistance is "sufficiently serious."  *Woods*, 2002 WL 31296325, at *3 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir. 1994) (*Hathaway* I), *cert. denied*, 513 U.S. 1154 (1995)); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the court must consider whether the record reveals that prison officials "'knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it.'" *Woods*, 2002 WL 31296325 at *3 (internal cites and alterations omitted); *see also Harrison*, 219 F.3d at 137.

A serious medical need is one of some urgency or one which, if ignored, may produce death, degeneration or extreme pain. *Hathaway,* 37 F.3d at 66. As the Second Circuit has explained, there is no "settled, precise metric" to guide the court in its estimation of the seriousness of a prisoner's medical condition. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Rather, "because the objective component of an Eighth Amendment claim is necessarily contextual and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted). Moreover:

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious," to support an Eighth Amendment claim.

*Id.* at 185-86 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In this case, as set forth in the "Statement of Undisputed Facts" submitted in support of defendant's summary judgment motion, Officer Arrington became aware of plaintiff's medical condition at approximately 5:00 p.m. on August 24, 2007. He immediately contacted the medical staff, and was told that the duty nurse would come to plaintiff's cell when she finished distributing medications. Arrington then brought a wheel chair and a gurney to plaintiff's cell to transport him to the infirmary, but plaintiff refused transport without medical staff. The duty nurse arrived at approximately 6:10 p.m., and plaintiff was placed in a cervical collar, lifted onto a backboard, and transported to the infirmary. At approximately 6:45 p.m., plaintiff was transported by ambulance to Erie County Medical Center where he received medical attention, including MRI's, CT scans, and surgery. *See*

Item 29-2, ¶¶ 9-16; *see also* Item 1, pp. 16-32 (Medical Records, Log Entries, and other Exhibits attached to Complaint).  This proof indicates that appropriate medical treatment was provided within approximately one hour and ten minutes,[5] falling into a category of "temporary" delay in the provision of medical care which the courts have generally recognized as insufficient to support a deliberate indifference claim.  *See, e.g., Bradley v. Rell*, 703 F. Supp. 2d 109, 123 (N.D.N.Y. 2010) (granting summary judgment in favor of defendants where pretrial detainee was provided medical treatment within four hours of sustaining injuries during application of force by arresting officers; listing cases).

With regard to the subjective prong, plaintiff must establish that each of the prison officials charged with deliberate indifference acted "with a sufficiently culpable state of mind …," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Wilson*, 501 U.S. at 298), which is the "equivalent of criminal recklessness."  *Victor v. Milicevic*, 361 F. App'x 212, 214 (2d Cir. 2010) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (*Hathaway* II)).  As explained at further length by the Supreme Court, because "deliberate indifference is a stringent standard of fault," *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997), satisfaction of the subjective prong requires a showing of conduct on the part of each defendant that "entails something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  Thus, a prison official acts with deliberate indifference to an inmate's health or safety only if he

---

[5]Even accepting as true the allegations in the complaint with respect to the timing of the August 24, 2007 incident, defendants became aware of plaintiff's medical condition at 3:27 p.m. (*see* Item 1, ¶ 13), and nursing staff arrived at his cell to provide assistance at 4:48 p.m. (*see id.* at ¶ 20), resulting in a delay of 1 hour 21 minutes in provision of medical treatment.

"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

As demonstrated by the discussion above, the undisputed proof in the record on summary judgment establishes that neither defendant Arrington nor defendant Balcer deliberately disregarded an excessive risk to plaintiff's health during the incident on August 24, 2007.  To the contrary, the evidence shows that, upon becoming aware of plaintiff's complaints of pain, defendants Arrington and Balcer both promptly contacted medical staff, and plaintiff received appropriate medical attention within – at most – two hours. *See* Item 29-2, ¶¶ 9-16.  Based on this record, and upon full consideration of pertinent legal authority, the court finds the evidence insufficient to convince a rational juror that the temporary delay in providing plaintiff with medical assistance on August 24, 2007 was, in objective terms, a sufficiently serious deprivation, or that defendants Arrington and Balcer knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it.

Accordingly, no reasonable jury could find in plaintiff's favor on his claim for money damages and injunctive relief under 42 U.S.C. § 1983 based on defendants' deliberate indifference to his serious medical needs in violation of the Eighth Amendment, and defendants are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Item 29) is granted, and the complaint is dismissed in its entirety with prejudice.

The Clerk of the Court is directed to enter judgment in favor of defendants.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.   *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

                                  \s\ John T. Curtin
                                     JOHN T. CURTIN
                        United States District Judge

Dated: January 23,  2012
p:\pending\2010\10-684.dec27.2012